UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KATHRYN M. LONERGAN-MILLIGAN,

                        Plaintiff,

v.                                            **DECISION AND ORDER**
                                                    14-CV-274S

NEW YORK STATE OFFICE OF MENTAL
HEALTH, WNY CHILDREN'S PSYCHIATRIC
CENTER,

                        Defendants.

## I. INTRODUCTION

Plaintiff, Kathryn M. Lonergan-Milligan ("Milligan" or "Plaintiff"), brings this action against Defendants New York State Office of Mental Health and WNY Children's Psychiatric Center ("CPC") (together, "Defendants"), asserting claims for gender discrimination, hostile work environment, and constructive discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").[1] Defendants have moved for summary judgment, seeking dismissal of Milligan's claims under Federal Rule of Civil Procedure 56. For the reasons discussed below, Defendants' motion is GRANTED.

## II. BACKGROUND[2]

In December 2005, CPC hired Milligan as a registered nurse (or "charge nurse"). CPC is a comprehensive behavioral health care facility that provides in-patient and out-patient services to seriously emotionally disturbed children and adolescents. Charge

---

[1] Plaintiff discontinued with prejudice the second cause of action alleging a violation of the New York Human Rights Law, New York Executive Law § 296 by stipulation of parties dated August 19, 2014. (Docket No. 9).

[2] The facts are derived principally from the parties' Local Rule 56 Statements, deposition testimony, the parties' declarations, and exhibits attached thereto. Only the facts necessary to the resolution of the motion are recounted below. The facts are undisputed unless otherwise stated.

1

nurses, like Milligan, work in one of three live-in units. A charge nurse is responsible for nursing care and treatment of patients and for the supervision of assigned registered nurses and other paraprofessional staff on the unit. In 2012, Milligan was assigned as charge nurse to Unit 807, where she worked with Stanley Rusin, a recreational therapist, and Gregory Mack, a secure care treatment aid. During her time in Unit 807, Milligan reported directly to Deborah Reed. Milligan had worked with Rusin since she was hired at CPC in 2005.

Milligan alleges that from as early as 2007, she has had issues working with Rusin. On Milligan's account, between 2007 and 2012, she interacted with Rusin approximately six times a day, five days a week. Milligan alleges that during this five-year period, she complained to Reed about Rusin's behavior on approximately ten occasions. Over the course of these ten interactions, Milligan alleges that Rusin would linger in the nurse's office, sit in the chair designated for nurses (which Milligan refers to as "her" chair), steal things from other colleagues, and pick on patients. Milligan testified that she did not believe Rusin behaved this way towards her due to her gender or to sexually harass her.

The primary incidents of alleged harassment animating Milligan's Complaint occurred in May of 2012. Milligan alleges that on May 4, 2012, she entered the nurse's office to find Rusin sitting in her chair. As she walked into the office, Rusin said, "Oh, here's the princess, the queen bee." When Milligan asked Rusin to leave her chair, Rusin allegedly responded by gesturing with both of his hands, reaching out (but not touching Milligan), and saying, "Come here, come here, I want you to bend over . . . on my lap so I can spank your bum." Milligan also alleges that on May 9, 2012, Rusin "plowed through a doorway that [Milligan] was holding open, and nudged [her] left elbow up." Milligan

2

reported this incident to CPC's Affirmative Action Officer, Kimberly Smith, on May 14, 2012. That same day, two other female nurses at CPC, Laura Biddle and Kathryn Lonergan, filed formal complaints against Rusin. Biddle claimed that Rusin massaged her shoulders and rubbed her back without her consent on three occasions between 2011 and 2012, and that Biddle felt uncomfortable around Rusin. Lonergan claimed that over three or four years, "Rusin has malingered at the nurse's station and stands behind her and other nurses making grunting and growling noises." Lonergan also alleged that on May 4, 2012, Rusin sat in her seat, and when she asked him to get up, he replied, "oh you need a spanking on the bum" as he left her seat. Following an investigation into these incidents, Defendants concluded that while Rusin's behavior was inappropriate, neither Biddle's nor Lonergan's incidents were corroborated and, in any case, did not rise to the level of sexual harassment. As to Rusin's complaint, Defendants offered voluntary mediation between Milligan and Rusin in late July of 2012.

On August 9, 2012, Milligan and Gary Mack had an altercation regarding the proper discipline of two of Mack's patients. After this incident, Milligan told Deborah Reed that she was quitting, and left CPC in the middle of her shift. Defendants subsequently sent Milligan a letter confirming they had been advised of her resignation, enclosing a resignation form for Milligan's signature. Milligan asked to rescind her resignation, and she returned to CPC in October of 2012 after a brief medical break. Upon her return, Milligan was placed on administrative leave pending investigation into whether Milligan violated any of Defendants' policies when she resigned unexpectedly in August 2012. One week after her return in October 2012, Milligan resigned from her position at CPC.

Milligan alleges that she suffered severe mental anguish due to the harassment at

CPC. She filed a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC") and, upon receiving a dismissal and notice of right to sue, Milligan brought this action.

### III. LEGAL STANDARDS

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2003) *cert. denied*, 540 U.S. 811, 124 S. Ct. 53, 157 L. Ed. 2d 24 (2003) (quoting Anderson, 477 U.S. at 248).

### IV. DISCUSSION

**A. Hostile Work Environment**

"A prima facie case of a hostile work environment involves two showings: (1) that the complained-of conduct 'was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'; and (2) that there are grounds to hold the employer liable for the harassing employee's conduct." Figueroa v. KK Sub II, LLC, 289 F. Supp. 3d 426, 433 (W.D.N.Y. 2018) (quoting Tolbert v. Smith,

4

790 F.3d 427, 439 (2d Cir. 2015)).

**1. Sufficiently Severe or Pervasive[3]**

"To rise to actionable harassment, alleged misconduct must be either 'sufficiently severe' or 'sufficiently . . . pervasive.'" Figueroa, 289 F. Supp. 3d at 433 (citing Dash v. Bd. of Educ. of City Sch. Dist. of N.Y., 238 F. Supp. 3d 375, 385–86 (E.D.N.Y. 2017)). To succeed on her claim, Milligan "must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (citing Leibovitz v. N.Y. City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001)); see also Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Alfano, 294 F.3d at 374 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). "The assessment of hostility looks to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

---

[3] Plaintiff also attempts to rely on evidence that Rusin was disciplined for two incidents that took place in 2013 and 2014 involving two other female employees of CPC. (Docket Nos. 45-20 at 10, 45-14, 45-15). Because it is well established that a Plaintiff cannot rely on events that occurred after her departure from the workplace, the Court has not considered them in its analysis. See Jenkins v. St. Luke's-Roosevelt Hosp. Ctr., 2009 WL 3682458, at *6, n.15 (S.D.N.Y. Oct. 29, 2009) ("Plaintiff cites no precedent in support of her apparent argument that her hostile work environment claim can be based on events occurring after her termination."); Fox v. Nat'l R.R. Passenger Corp., 2009 WL 425806, at *6 (N.D.N.Y. Feb. 19, 2009) ("Here, Fox was no longer an active employee when the incidents allegedly occurred, and Fox did not witness any of the statements to co-workers regarding their need to 'watch their backs.' Therefore, the Court fails to see how these incidents affected his working environment."), aff'd sub nom. Fox v. Nat'l R.R. Passenger Corp., 370 F. App'x 156 (2d Cir. 2010) (summary order); Eldaghar v. City of New York Dep't of Citywide Admin. Servs., 2008 WL 2971467, at *16 (S.D.N.Y. 2008) (transfer denial not evidence of a hostile work environment because it did not occur until after plaintiff's termination).

whether it unreasonably interferes with an employee's work performance." Figueroa, 289 F. Supp. 3d at 434 (internal citation and quotation marks omitted); Harris, 510 U.S. at 23, 114 S. Ct. 367 (same). To meet the "sufficiently severe or pervasive" requirement, Milligan "'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.'" Alfano, 294 F.3d at 374 (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)). "Accordingly, in the absence of extreme severity, isolated instances are typically not pervasive enough to constitute a hostile work environment." Figueroa, 289 F. Supp. 3d at 434 (citing Kaytor, 609 F.3d at 547).

Drawing all reasonable inferences in Milligan's favor, Defendants have established their entitlement to summary judgment because "no reasonable jury could find that the alleged misconduct was objectively severe or pervasive." Id. Milligan, at most, alleges twelve objectionable exchanges over the course of sixty months (or five years), the main two of which occurred within days of each other in May of 2012. In addition to these two incidents, Milligan testified at her deposition that in 2007, she first complained about Rusin's work performance to her supervisor, Deborah Reed.[4] From 2007 to 2012, Milligan believes that she complained to Reed a maximum of ten times "about [Rusin's] boundaries," "lingering in the nursing office," and "sitting in [her] chair," and the way Rusin

---

[4] Defendants, for the first time in their reply brief, urge this court to limit its analysis to incidents occurring after March 6, 2012 on statute of limitations grounds. "The statute of limitations is an affirmative defense under Fed. R. Civ. P. 8(c) that must be asserted in a party's responsive pleading 'at the earliest possible moment' and is a personal defense that is waived if not promptly pleaded." Davis v. Bryan, 810 F.2d 42, 44 (2d Cir. 1987) (quoting Santos v. District Council, 619 F.2d 963, 967 n. 5 (2d Cir. 1980)). Accordingly, Defendants' failure to raise this argument in its opening brief amounts to a waiver and therefore the Court will consider the totality of the incidents beginning in 2007. Jiles v. Rochester Genesee Reg'l Transportation Auth., 317 F. Supp. 3d 695, 701 (W.D.N.Y. 2018) ("It is well settled that courts should not consider arguments first raised in a party's reply brief which afford no opportunity for response from the opposing party.") (internal citation, quotation marks, and alterations omitted) (collecting cases).

performed his work duties in general.

The incidents and comments Milligan attest to are not "sufficiently continuous and concerted to have altered the conditions of her working environment'" and thus cannot reasonably be characterized as pervasive. Alfano, 294 F.3d at 374 (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)); see also Cristofaro v. Lake Shore Cent. Sch. Dist., No. 06-CV-0487-S, 2011 WL 635263, at *7 (W.D.N.Y. Feb. 11, 2011), aff'd, 473 F. App'x 28 (2d Cir. 2012) ("Plaintiff does not allege more than four or five comments over a seven-year period that arguably made her uncomfortable. This is distinguishable from 'a steady stream of unwelcome, escalating harassment.'" (quoting Maher v. Alliance Mortg. Banking Corp., 650 F. Supp. 2d 249, 264 (E.D.N.Y. 2009)); Paul v. Postgraduate Ctr. For Mental Health, 97 F. Supp. 3d 141, 182-83 (E.D.N.Y. 2015) (collecting cases and concluding that "five [occurrences] over the course of roughly fourteen months . . . [is] a rate of occurrence which courts [in the Second Circuit] have found to be infrequent"). Milligan's objection to Rusin's behavior more closely resembles "a laundry list of inconveniences" relating to Rusin, "none of which are the type of severity or persistence necessary to sustain a hostile work environment claim." Mento v. Potter, No. 08-CV-74S, 2012 WL 1908920, at *14 (W.D.N.Y. May 25, 2012) (citing Brown v. N.Y. State Dep't of Corr. Servs., 583 F. Supp. 2d 404, 416-17 (W.D.N.Y. 2008)).

In absence of pervasiveness, a reasonable jury would need some counterbalance of severity to conclude the existence of a hostile work environment. When considering the "line between complaints that are easily susceptible to dismissal as a matter of law and those that are not," with respect to severity, courts must distinguish between (1) "complaints of sexual assaults; other physical contact, whether amorous or hostile, for

7

which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; and obscene language or gestures" versus (2) "the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers." Redd v. New York Div. of Parole, 678 F.3d 166, 177 (2d Cir. 2012).

The incidents that Milligan describe are more akin to the second category of generally unactionable conduct. In one incident, Rusin told Milligan to "bend over . . . on [his] lap so [that] [he] can spank [her] bum," gesturing with both of his hands; in the other, Rusin nudged Milligan's elbow while passing her through a doorway. Milligan also points to the incidents involving Lonergan and Biddle, nurses at CPC.[5] Lonergan alleged that Rusin harassed her in the exact same manner (and on the same day) as he did to Milligan on May 4, 2012 (i.e., that Rusin sat in the nurse's chair, gestured at her, and made comments about spanking her). Biddle alleged that Rusin touched her shoulders on three occasions (unaccompanied by any suggestive comments). See Smith v. AVSC Int'l, Inc., 148 F. Supp. 2d 302, 310 (S.D.N.Y. 2001) (finding that when "the other employees targeted" are "in the same protected class as the plaintiff," "[a]llegations of harassing acts against other employees may be relevant to a hostile work environment claim").

Although Rusin allegedly touched Biddle's shoulders on three occasions between 2011 and 2012, this is simply not the type of physical contact that courts in this Circuit

---

[5] Defendants also argue in their reply brief that the Court should not consider the incidents involving Biddle and Lonergan because Milligan did not raise them in her EEOC charge. Because Defendants failed to raise this exhaustion argument in their opening brief, the Court will not consider it. See Jiles, 317 F. Supp. 3d at 701. Moreover, given the Court's obligation to consider the totality of the circumstances in its hostile work environment analysis, any evidence of misconduct targeting other employees during the specified time period is relevant.

8

have deemed to be severe. See, e.g., Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998), abrogated on other grounds, Cox v. Onondaga Cty. Sheriff's Dep't, 760 F.3d 139 (2d Cir. 2014) (affirming a district court's grant of summary judgment dismissing complaint where plaintiff alleged that her supervisor told her she had been "voted the sleekest ass in the office" and on another occasion "deliberately touched [her] breasts with some papers that he was holding in his hand"); Toyama v. Hasaki Rest., Inc., No. 13 CIV. 4892 AKH, 2014 WL 7234602, at *4 (S.D.N.Y. Dec. 18, 2014) (granting summary judgment on hostile work environment sexual harassment claim where plaintiff alleged one instance where co-worker came up behind her, pressed his body against her, and rubbed his pelvis against her back); Mendez-Nouel v. Gucci Am., Inc., No. 10 CIV. 3388 PAE, 2012 WL 5451189, at *10 (S.D.N.Y. Nov. 8, 2012), aff'd, 542 F. App'x 12 (2d Cir. 2013) ("Mendez–Nouel alleges that Daly twice grabbed his shoulders, each time for less than five seconds. On one of those occasions, Daly allegedly ran his hand down Mendez–Nouel's back. These events can only be characterized as 'episodic' and 'isolated,' and do not constitute the 'concerted' or 'continuous' course of harassment that Title VII" requires) (quoting Alfano, 294 F.3d at 374); Wells-Williams v. Kingsboro Psychiatric Ctr., No. 03-CV-134(CBA), 2007 WL 1011545, at *5 (E.D.N.Y. Mar. 30, 2007) (granting summary judgment for the defendant on a hostile work environment claim where a coworker "used strong language and expletives against plaintiff and that on another occasion, he made obscene gestures and language using a cucumber and tomatoes in a loud and abusive tone" in addition to physical contact).

And, while a greater degree of severity could be inferred to the "obscene language and gestures" regarding the May 4, 2012 incidents that both Milligan and Lonergan attest

9

to—namely, that Rusin gestured his hands and said he wanted to spank them—it is well established that "the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers" is typically not actionable. Redd, 678 F.3d at 177; Quinn, 159 F.3d at 768 ("Though the two incidents in question—Fahey's comment, apparently regarding Quinn's posterior, and his use of papers held in his hand to touch her breasts—are obviously offensive and inappropriate, they are sufficiently isolated and discrete that a trier of fact could not reasonably conclude that they pervaded Quinn's work environment. Nor are these incidents, together or separately, of sufficient severity to alter the conditions of Quinn's employment without regard to frequency or regularity.").

Finally, because "it is 'axiomatic' that" "establish[ing] a sex-based hostile work environment" claim requires that a plaintiff "demonstrate that the conduct occurred because of her sex," Alfano, 294 F.3d at 374, Milligan's own concession that she does not believe that Rusin sat in her chair and did so due to her gender or to sexually harass her further undermines her hostile work environment claim. See id. at 378 ("Facially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex," which "requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory."); Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("[M]istreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic.") (emphasis added).

10

Based on a review of the record, even under the most favorable treatment for Milligan, no reasonable jury could find that the collective incidents between 2011 and 2012, coupled with the "laundry list of inconveniences" from 2007, Mento, 2012 WL 1908920, at *14, rose to the level of a hostile work environment. Accordingly, Defendants' motion for summary judgment as to Milligan's hostile work environment claim is GRANTED.

### 2. Attribution to Employer

Because the alleged misconduct, even in the light most favorable to Milligan, fails to rise to the level of a hostile work environment, the Court need not reach the question of employer liability for this claim.

### B.  Retaliation Based on Constructive Discharge

"In order to establish a prima facie case of retaliation, a plaintiff must establish (1) participation in an activity protected by federal discrimination statute; (2) the defendant was aware of this activity; (3) an adverse employment action; and (4) a causal connection between the alleged adverse action and the protected activity." Dall v. St. Catherine of Siena Med. Ctr., 966 F. Supp. 2d 167, 192 (E.D.N.Y. 2013) (citing Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013)). "'Constructive discharge is considered an adverse employment action sufficient to support a retaliation claim.'" Valleriani v. Route 390 Nissan LLC, 41 F. Supp. 3d 307, 320 (W.D.N.Y. 2014) (quoting Dall, 966 F. Supp. 2d at 194).

Constructive discharge of an employee will occur only "when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily . . . Working conditions are

intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Chamblee v. Harris & Harris, Inc., 154 F. Supp. 2d 670, 675 (S.D.N.Y. 2001) (internal citations and quotations omitted). With respect to the claim here, "[c]reation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case." Pennsylvania State Police v. Suders, 542 U.S. 129, 149, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004).

Accordingly, a "Plaintiff's inability to establish a hostile work environment also prevents [her] from establishing a constructive discharge claim. To state such a claim, a plaintiff must show that his employer 'intentionally created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" Parron v. Herbert, No. 17 CIV. 3848 (GBD), 2018 WL 2538221, at *12 n. 11 (S.D.N.Y. May 18, 2018) (quoting Croom v. Western Conn. State Univ., 77 F. App'x 60, 61 (2d Cir. 2003) (summary order)). "Because '[t]his standard is higher than the standard for establishing a hostile work environment,' where, as here, the plaintiff 'fail[s] to establish a hostile work environment, her claim of constructive discharge also fails.'" Id. (quoting Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010)).

Accordingly, Milligan's failure to establish the discriminatory element of her claims is fatal to her constructive discharge claim. Cf. Fincher, 604 F.3d at 725 ("Because Fincher failed to establish a hostile work environment, her claim of constructive discharge also fails."). Defendants' motion to dismiss Milligan's constructive discharge claim is therefore GRANTED.

## V. CONCLUSION

Milligan has failed to establish even a *prima facie* case that Defendants violated Title VII. Accordingly, Defendants' motion for summary judgment is granted and the case is dismissed.

## VI. ORDERS

IT HEREBY IS ORDERED that Defendants New York State Office of Mental Health and WNY Children's Psychiatric Center's motion for summary judgment (Docket No. 40) is GRANTED;

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: December 17, 2018
Buffalo, New York

                                                  /s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                  United States District Judge